CLIFTON, Circuit Judge,
dissenting:
I respectfully dissent. “To reverse the BIA finding we must find that the evi *653 dence not only supports that conclusion, but compels it.” INS v. Elias-Zacarias, 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). The majority reverses the finding of the BIA and the IJ that Colobong failed to establish that she suffered past persecution on account of a protected ground, but the evidence does not compel the majority’s conclusion.
The brutal murder of Colobong’s husband, Simeon Colobong, was tragic. It is not so clear, though, that it was motivated by an actual or imputed political opinion. No witnesses identified the assailants and the murder was never solved. Petitioner suggested that responsibility might lie with the New People’s Army or perhaps with an unnamed high-ranking government official, but she cited only rumors and anonymous notes to support her suspicions, nothing compelling or even very persuasive. Notably, she identified no political opinion held by her husband that might be expected to put him at risk and gave no reason why her husband would be targeted by any particular assailant beyond the fact that Simeon was an elected official in their village.
It is even less clear that a political motivation aimed at harming the husband, especially if based upon his position as an elected village official, might extend to put Petitioner at risk. She was not an elected village official. The majority notes that the political leader of a neighboring village was killed, but there’s no evidence that other members of that leader’s family were harmed. Petitioner described herself as a social activist, but being president of the local parent teacher association is hardly compelling proof that she was herself at risk on account of an imputed political opinion. Other members of the family continued to live in the Philippines for many years without incident. The evidence does not compel a conclusion that Petitioner could not have done the same.
The involvement of Simeon’s uncle Efren Colobong is especially hard to reconcile with the political motivation alleged by Petitioner. It was Efren who came to the family’s door one night and called for Simeon to go out. A short time later, Simeon was shot 64 times. Petitioner’s brother Guillermo told the family about the dead body in the street near the family’s home. Efren apparently did not appear. Petitioner testified that she later begged Efren to tell her what happened but Efren refused to open his mouth. Years later an immigration agent contacted Efren, by then himself living in Honolulu, and Efren said he barely knew Petitioner and her daughter, though Efren’s wife contradicted that denial. Out of these unusual facts it is not hard to infer that Simeon might have been killed on account of something other than his political opinion. The evidence simply does not compel a finding that the motivation for Simeon’s murder must have been his political opinion and that Petitioner was at risk due to some imputed political opinion.
The majority concludes by noting that the IJ specifically wrote in 2004 that she would exercise her discretion to grant Petitioner asylum, and that we have suggested that the way an asylum applicant enters the country, even when the entry involved fraud, should not weigh against a favorable exercise of discretion. But that ignores the rest of the story. Petitioner’s fraud did not stop once she entered the United States. She continued to use a false name and social security number and ran up unpaid debt using that false name, such that by 2007 the same IJ decided that Petitioner did not deserve a favorable exercise of discretion, in the context of a request for a waiver of inadmissibility:
*654 This will be a rare case in which this Court denies a discretionary waiver to an applicant whose close relatives are active duty military, but the Court simply cannot conclude that the favorable factors outweigh the adverse factors. In summary, the misrepresentation waiver will be denied because of the extent of immigration fraud, the pattern and extent of unpaid debt in the Vísperas name, the continuing employment during removal proceedings in the name of Lydia Vísperas, and because the respondent has returned twice to the Philippines of her own accord which suggests that the level of danger she faces there is not substantial at this time.
Like many applicants, Petitioner presented a story with some highly sympathetic aspects, but it was not a one-sided story. More to the point, it was not a story that compelled a conclusion in Petitioner’s favor. I would deny the petition.